IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JOHN RAY,** )<br>)<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**CAROLYN W. COLVIN, ACTING** )<br>**COMMISSIONER OF SOCIAL** )<br>**SECURITY,** )<br>)<br>)<br>**Defendant.** )<br>_____ ) | **Case No. 13-4043-CM** |

## MEMORANDUM AND ORDER

Plaintiff John Ray claims that he became unable to work on November 23, 2009, because of the following health issues: (1) a lower back injury; (2) a dislocated right shoulder; (3) hepatitis C; and (4) osteoarthritis of the hands, knees, and hips—all complicated by a learning disorder, anxiety disorder, attention deficit disorder, and personality disorder with antisocial features. In the past, plaintiff worked jobs in construction and manual labor. He currently works ten to twenty hours a week doing odd jobs such as painting and minor carpenter work. He filed this action pursuant to Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381 et seq., requesting supplemental security income benefits.

An Administrative Law Judge ("ALJ") found that plaintiff was not disabled in a decision dated December 2, 2011, which stands as the final decision of the Commissioner of Social Security. Plaintiff contends that the ALJ erred in three ways: (1) the ALJ did not consider whether plaintiff's impairments met or equaled Listing 12.05C of 20 C.F.R. Part 404, Subpart P, Appendix No. 1; (2) the ALJ failed to develop the record; and (3) the ALJ's findings regarding plaintiff's residual functional capacity

-1-

("RFC") are unsupported by substantial evidence. After reviewing the record, the court makes the following rulings.

## I.     Legal Standard

This court applies a two-pronged review to the ALJ's decision: (1) Are the factual findings supported by substantial evidence in the record? (2) Did the ALJ apply the correct legal standards? *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). "Substantial evidence" is a term of art. It means "more than a mere scintilla" and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter v. Astrue*, 321 F. App'x 789, 792 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). When evaluating whether the standard has been met, the court is limited; it may neither reweigh the evidence nor replace the ALJ's judgment with its own. *Bellamy v. Massanari*, 29 F. App'x 567, 569 (10th Cir. 2002) (citing *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995)). On the other hand, the court must examine the entire record—including any evidence that may detract from the decision of the ALJ. *Jaramillo v. Massanari*, 21 F. App'x 792, 794 (10th Cir. 2001) (citing *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994)).

Plaintiff bears the burden of proving disability. *Hunter*, 321 F. App'x at 792. A disability requires an impairment—physical or mental—that causes one to be unable to engage in any substantial gainful activity. *Id.* (quoting *Barnhart v. Walton*, 535 U.S. 212, 217 (2002)). Impairment, as defined under 42 U.S.C. § 423(d)(1)(A), is a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

The ALJ uses a five-step sequential process to evaluate disability claims. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (citation omitted). But the ALJ may stop once he makes a

disability determination; he does not need to continue through subsequent steps if he is able to find a claimant disabled or not disabled at an intermediate step. *Id*.

The components of the five-step process are:

- **Step One**: The plaintiff must demonstrate that he is not engaged in substantial gainful employment activity. *Id*. If the plaintiff meets this burden, then the ALJ moves to Step Two.
- **Step Two**: The plaintiff must demonstrate that he has a "medically severe impairment or combination of impairments" that severely limits his ability to do work. *Id*. (internal quotation omitted).
    o If the plaintiff's impairments have no more than a minimal effect on his ability to do work, then the ALJ can make a nondisability determination.
    o If the plaintiff makes a sufficient showing that his impairments are more than minimal, then the ALJ moves to Step Three.
- **Step Three**: The ALJ compares the impairment to the "listed impairments"—impairments that the Secretary of Health and Human Services recognizes as severe enough to preclude substantial gainful activity. *Id*. at 751.
    o If the impairment(s) match one on the list, then the ALJ makes a disability finding. *Id.*
    o If an impairment is not listed, the ALJ moves to Step Four of the evaluation. *Id*.
- **Prior to Step Four**: The ALJ must assess the plaintiff's RFC. *Baker v. Barnhart*, 84 F. App'x 10, 13 (10th Cir. 2003) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)).
- **Step Four**: The plaintiff must show that he cannot perform his past work. *Williams*, 844 F.2d at 751. If plaintiff shows that he cannot, the ALJ moves to the last step.
- **Step Five**: Here, the burden shifts to the ALJ. The ALJ must show that the plaintiff can perform some work that exists in large numbers in the national economy. *Id*.

## II. <u>Analysis</u>

### A. The Administrative Decision

The ALJ made the following determinations:

- **Step One**: Plaintiff worked after his alleged disability onset date. His work did not, however, rise to the level of substantial gainful activity.

- **Step Two**: Plaintiff has severe impairments of (1) learning disorder, (2) anxiety disorder (NOS), (3) personality disorder with antisocial features, and (4) cannabis dependence.

- **Step Three**: Plaintiff's impairments (or combination of impairments) do not meet or medically equal a "listed impairment."

- **Prior to Step Four**: Plaintiff has the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:
    - Simple to intermediate tasks, limited to jobs not demanding attention to detail or complicated job tasks or instructions;
    - No jobs that require close cooperation and interaction with co-workers (working in relative isolation is best);
    - No interaction and cooperation with the general public;
    - Can maintain attention and concentration for minimum two-hour periods;
    - May adapt to changes in the workplace on a basic level; and
    - Able to accept supervision on a basic level.

- **Step Four**: Plaintiff cannot perform his past relevant work.

- **Step Five**: There are jobs that exist in significant numbers in the national economy that plaintiff can perform, including injection mold machine tender, riveting machine operator, and patching machine operator.

- **Conclusion**: Plaintiff has not been disabled since November 23, 2009.

**B. Plaintiff's Claims**

As mentioned above, plaintiff alleges three overriding errors with the ALJ's decision. The court examines each of these claims below.

### 1. *Listing 12.05C*

Plaintiff first contends that the ALJ should have considered whether his impairments met listing 12.05C, which states in relevant part:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. . . .

20 C.F.R. pt. 404, subpt. P, app. no. 1. Plaintiff had a verbal IQ score of 70 and other mental impairments. But the record is silent on whether plaintiff had an onset of mental retardation before age 22. *See Havenar v. Astrue*, 438 F. App'x 696, 698 (10th Cir. 2011) (requiring that a plaintiff meet one of 12.05's four "severity prongs," as well as the "capsule definition"). The record indicates that plaintiff failed to finish high school, leaving in either ninth or eleventh grade. (Doc. 9-3 at 30 (eleventh); 37–38 (ninth).) He tried twice to earn a GED, but was unsuccessful. The record does not indicate when plaintiff made those attempts, though, and plaintiff testified that he left school to work— not because he could not mentally complete the schoolwork. (Doc. 9-3 at 37–38 ("So I started building houses when I was eight years and by being taught by people in my family and other people,

-5-

and it just seems more interesting to go work and build something than go to school. So I just – I stopped caring about school.").) And plaintiff's attorney did not ask the ALJ to consider Listing 12.05C. *See Bland v. Astrue*, 432 F. App'x 719, 721–22 (10th Cir. 2011) ("[T]he ALJ may ordinarily require counsel to identify the issue or issues requiring further development." (internal quotation marks and citation omitted)); *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (noting that an ALJ may "rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored" (internal quotation marks and citation omitted)). In fact, counsel focused on plaintiff's organic mental disorder and his physical complaints. (*See* Doc. 9-3 at 29; *see generally id.* at 36–46.)

Ultimately, plaintiff bears the burden of showing that he has a listed impairment. *See Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). The ALJ considered and discussed listings other than 12.05C that were supported by the evidence: 12.02 (organic mental disorders); 12.06 (anxiety related disorders); 12.08 (personality disorders); and 12.09 (substance addition disorder). Each of these had been identified by Dr. Charles Fantz. (Doc. 9-1 at 303.) The cognitive testing that Dr. Barnett administered also resulted in a performance IQ score of 87 and a full scale IQ score of 76—both well above his verbal IQ score of 70. Based on his examination, Dr. Barnett diagnosed plaintiff with a learning disorder. The first time that mental retardation was mentioned or suggested in this case was in plaintiff's opening brief. Substantial evidence supports Dr. Barnett's finding—not one of mental retardation. *See Wall*, 561 F.3d at 1062 ("Nothing in the record indicates that Claimant exhibited signs of subaverage general intellectual functioning before age twenty-two. Thus, the ALJ did not err in failing to consider listing 12.05(c)."). Plaintiff is not entitled to relief on this issue.

### 2. Failure to Develop the Record

Plaintiff next contends that the ALJ failed to develop the record as to his Hepatitis C diagnosis. An ALJ does have the duty to fully develop the record regarding material issues. *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997). The plaintiff, on the other hand, must bring evidence to the ALJ's attention. *See* 20 C.F.R. § 416.912(d). Plaintiff indicated at the hearing that he contracted Hepatitis C in 1997 or 1998. He also testified that he had his liver panels checked "[l]ast year or this year" at Lawrence Memorial Hospital. (Doc. 9-3 at 40.) But the ALJ noted that he did not find evidence of testing or a diagnosis in the Lawrence Memorial records.

The missing element for this argument is materiality. Plaintiff has not shown how more development of the record regarding his Hepatitis C would make a difference. *See Fore v. Astrue*, No. 12-1048-JWL, 2013 WL 500875, at *4 (D. Kan. Feb. 11, 2013) ("Plaintiff points to no pertinent, available medical records which should have been, but were not, secured by the ALJ."). Plaintiff did not testify of any way in which his Hepatitis C limits his activities or abilities. And counsel did not indicate that any medical records were missing or identify any significance associated with the liver testing. *See Branum v. Barnhart*, 385 F.3d 1268, 1271–72 (10th Cir. 2004) ("[P]laintiff has made no showing that anything of significance is missing from the current record."). Plaintiff is also not entitled to relief on this issue.

### 3. RFC Determination

At Step Four, plaintiff contends that the ALJ erred because he did not address any of plaintiff's physical limitations. Plaintiff testified about problems with his back, shoulder, and hands, but the ALJ did not mention any of these limitations in his RFC. He explained his decision to omit any physical limitations because (1) plaintiff continued to work despite claiming medical disability; (2) the record

-7-

contained little evidence about plaintiff's medical conditions; (3) the objective medical evidence did not support plaintiff's claim; and (4) plaintiff controlled his pain with over-the-counter medication.

The ALJ offered thorough reasoning for his credibility decision. And substantial evidence supports his determination that (1) plaintiff continued to work (to some degree); and (2) there is little evidence about plaintiff's medical conditions. But there are two critical errors with the ALJ's analysis. First, regarding the objective medical evidence: The ALJ stated that he gave Dr. Sankoorikal's findings significant weight. Dr. Sankoorikal, however, opined that pain was "the limiting factor." (Doc. 9-9 at 291.) And he noted a limited range of motion in plaintiff's lumbar, ankle, wrists, and right shoulder. Yet the ALJ did not explain why he rejected the limiting portions of Dr. Sankoorikal's opinion. The ALJ purported to adopt Dr. Sankoorikal's findings, but his RFC does not reflect that. An ALJ need not devise an RFC that mimics a medical source's opinion. But if the ALJ elects not to adopt part of a medical source's opinion, he must explain why. *See Chapo v. Astrue*, 682 F.3d 1285, 1291–92 (10th Cir. 2012) (citations omitted). Here, the ALJ did not do that.

Second, as partial justification for discounting plaintiff's claims of disabling physical pain, the ALJ noted that plaintiff only took over-the-counter medication. (*See* Doc. 9-3 at 21 (mentioning plaintiff's over-the-counter medication, but not in credibility analysis); 22 (mentioning plaintiff's over-the-counter medication in credibility analysis).) At times, this may be a fair consideration. *See Dellinger v. Barnhart*, 298 F. Supp. 2d 1130, 1137 (D. Kan. 2003) (citation omitted) ("Minimal or conservative medical treatment may evince a pain that is not disabling."). But in this case, plaintiff testified that he did not pursue more treatment because he could not afford it. (*See* Doc. 9-3 at 39, 40; *see also* Doc. 9-10 at 404.) Where a plaintiff shows an inability to afford treatment, a failure to seek treatment may not be held against him. *Madron v. Astrue*, 311 F. App'x 170, 178 (10th Cir. 2009); *Miranda v Barnhart*, 205 F. App'x 638, 642 (10th Cir. 2005) (citations omitted). The ALJ did not

-8-

necessarily err by noting that plaintiff used over-the-counter medication.  But on remand, he should also consider plaintiff's ability to afford other medication.

## III.     Conclusion

Based on the above analysis, the court affirms the Commissioner's decision in part and reverses and remands in part.  On remand, the ALJ should explain the weight he gives to that portion of Dr. Sankoorikal's opinion addressing plaintiff's physical limitations.  Based on this explanation, reconsideration of the RFC may or may not be appropriate.  The ALJ should also consider plaintiff's ability to afford medication if he discusses plaintiff's use of over-the-counter medication as part of his credibility analysis.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is affirmed in part and reversed and remanded in part.  The case is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order.

Dated this 7th day of July, 2014, at Kansas City, Kansas.

          s/ Carlos Murguia  
          **CARLOS MURGUIA**  
          **United States District Judge**